**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pilar Gallardo,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-20-00321-TUC-JGZ (JR)<br><br>**ORDER** |

Pending before the Court is Magistrate Judge Jacqueline M. Rateau's Report and Recommendation (R&R) recommending that the District Court affirm the Social Security Commissioner's final decision denying Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Insurance Benefits. (Doc. 33.) Plaintiff filed an Objection. (Doc. 34.)  Defendant did not file a response.

After an independent review of the parties' briefing and of the administrative record, the Court will sustain Plaintiff's objection in part, adopt the Report and Recommendation in part, reverse the Commissioner's final decision, and remand for further proceedings consistent with this Order.

**STANDARD OF REVIEW**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

(9th Cir. 2003) (en banc) (emphasis in original). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). *See also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Further, a party is not entitled as of right to de novo review of evidence or arguments which are raised for the first time in an objection to the report and recommendation, and the Court's decision to consider them is discretionary. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621-622 (9th Cir. 2000).

## BACKGROUND

Plaintiff applied for social security benefits in 2016, alleging she had been unable to work based on physical and mental impairments.[1] (Doc. 33 at 1-3.) The Social Security Administration denied Plaintiff's application for benefits. (*Id.* at 1.) Plaintiff requested an evidentiary hearing. (*Id.*)

At the hearing, testimony was taken from Plaintiff and three expert witnesses called by the administrative law judge (ALJ), including a psychologist, neurologist, and vocational expert. (*Id.* at 2.) Plaintiff also presented medical records and lay witness statements reflecting her medical symptoms from her epilepsy, obesity, bipolar disorder, anxiety disorder, unspecified neurocognitive disorder, and the side effects from her seizure medication. (Doc. 19.)

In a written decision, the ALJ applied the five-step sequential evaluation process and determined that Plaintiff was not eligible for benefits, giving "significant weight" to the opinions of two of the experts. (Doc. 19-3 at 24, 26.) In particular, the ALJ found that Plaintiff did not satisfy the third and fifth steps. (*Id.* at 18-20, 27-28.)

At the third step, Plaintiff must show that her impairment "meets or equals one of [the] listings in appendix 1," which if established, is conclusive of disability, and therefore conclusive of benefits. 20 C.F.R. § 404.1520(a)(4)(iii); *Lester v. Chater*, 81 F.3d 821, 828 & n.5 (9th Cir. 1995) ("Claimants are conclusively disabled if their condition *either* meets

---

[1] The parties do not object to the factual and procedural background as summarized by the Magistrate Judge. Accordingly, the Court will adopt the R&R's summary of the background and restate only those facts necessary for resolution of the case. (Doc. 33 at 1-4.)

*or* equals a listed impairment." (emphasis in original)). The ALJ found that Plaintiff's impairments did not meet or medically equal the listed impairments. (Doc. 19-3 at 18-20.) The ALJ reasoned, in part, that "the medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment." (*Id.* at 19.) In reaching this conclusion, the ALJ gave significant weight to the opinions of the non-treating neurologist and psychologist, Dr. Rack and Dr. Layton. (*Id.* at 23-24, 26, 54.) The ALJ denied Plaintiff's request to strike the Dr. Layton's testimony based on his failure to consider the lay witness statements, stating that medical experts are provided and review only medical records whereas lay witness testimony is considered by the ALJ who considers the entire record. (*Id.* at 14.)

The ALJ proceeded with the evaluation, as a claimant will still be entitled to benefits if she can satisfy the last two steps, even though the claimant was unable to prove the third step. 20 C.F.R. § 404.1520(a)(4)(v). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007). "A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989); 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."). In evaluating claimant's functional limitations, the ALJ must consider the intensity, persistence, and limiting effects of the claimant's symptoms. (Doc. 19-3 at 21.) Here, the ALJ found that "claimant has the residual functional capacity to perform a range of light work." (*Id.* at 20-21.) In making this determination, the ALJ gave "significant weight" to the psychologist's testimony because "he is familiar with the Commissioner's regulations for evaluating disability" and his "opinion is based on clinical findings and is consistent with the record as a whole." (*Id.* at 26.)

The ALJ further found that Plaintiff could perform other work. (*Id.* at 27-28.) As a result, the ALJ concluded that Plaintiff was not entitled to benefits. (*Id.* at 28-29.)

Plaintiff's petition for review to the Appeals Council was summarily denied. (Doc. *Id.* at 2.) Therefore, the ALJ's decision became the final decision of the Commissioner. (*Id.* at 2.) Plaintiff timely filed this action for review of the Commissioner's final decision.

## DISCUSSION

In her opening brief, Plaintiff advanced four arguments for reversal of the Commissioner's final decision:

1. The ALJ erred by not addressing the opinion of Dr. Zabel regarding Gallardo's need for a job coach in evaluating whether other work existed at the fifth step of the sequential disability evaluation process;

2. The ALJ erred in giving "significant weight" to the opinion of Kent Brian Layton, Ph.D., whom the ALJ called as a "medical" expert when Dr. Layton did not consider the lay witness statements that were in evidence;

3. The ALJ erred by discounting the lay witness statements on the grounds that the lay witnesses were not "medical professionals"; and

4. The ALJ erred in evaluating [Plaintiff's] testimony by mischaracterizing [her] activities as being in contradiction to her doctor's advice and as being more substantial than they actually are.

(Doc. 27 at 1.) This action was referred to Magistrate Judge Rateau for a report and recommendation. (Doc. 15.) After consideration of the parties' briefing, the Magistrate Judge rejected all of Plaintiff's arguments except for the third argument, and as to the third argument, the Magistrate Judge concluded that the ALJ's error in failing to consider lay witness statements was harmless. (Doc. 33 at 11-12.) Accordingly, the Magistrate Judge recommended that this Court affirm the Commissioner's final decision. (*Id.* at 12.)

In her Objection, Plaintiff challenges the Magistrate Judge's conclusions as to arguments 2, 3 and 4, and specifically, the Magistrate Judge's determination that any error with respect to argument 3 is harmless. The Court will address the objections in order.[2]

---

[2] The Magistrate Judge rejected Plaintiff's first argument, that the ALJ erred by not addressing the opinion of Jeffrey W. Zabel, Ph.D., regarding Plaintiff's need for a job coach in evaluating whether other work existed at step five of the sequential disability evaluation process. The Magistrate Judge found no reversible error and thoroughly explained her reasoning. (Doc. 33 at 5-7.) Because Plaintiff does not object to that conclusion, the Court will not conduct any review of this issue and will adopt the R&R's reasoning and conclusion. *See Thomas,* 474 U.S. at 149 (noting district court not required to conduct any

I.   **Applicable Legal Standards**

"The ALJ's decision denying the disability insurance benefits will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "However, a reviewing court must review the record as a whole and consider adverse as well as supporting evidence." *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). This Court will "not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes." *Id.* The Court will "not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

II.  **Consideration of Lay Witness Testimony and Expert Opinions**

Plaintiff's arguments 2 and 3 both pertain to the role of the ALJ in considering lay witness testimony. In argument 2, Plaintiff asserts that the ALJ erred in giving "significant weight" to Dr. Layton's opinion because he did not consider the lay witness statements and rejected the statements as irrelevant. In argument 3, Plaintiff asserts that the ALJ erred in discounting the lay witness statements on the grounds that the witnesses were not "medical professionals." Because the Court finds that both arguments relate to the ALJ's duty to consider and weigh lay witness testimony, the Court addresses the two arguments together.

review of an issue not subject to an objection).

*See Bruce v. Astrue*, 557 F.3d 1113, 1115-16 (9th Cir. 2009) (discussing the ALJ's and medical expert's consideration of lay witness testimony together).

### A. The ALJ's Legal Error

In determining disability, "an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce,* 557 F.3d at 1115 (citation omitted). Here, the ALJ stated that he considered the lay witness testimony of Plaintiff's family and friends, but that it was of limited value because the witnesses "are not medical professionals." (Doc. 19-3 at 26.) After discounting this testimony, the ALJ concluded that "the medical evidence does not support that the claimant would be unable to sustain a range of light work." (*Id*.)

The Magistrate Judge correctly found that the ALJ erred in rejecting the lay witness statements on the ground that they were not medical professionals. (Doc. 33 at 11-12.)[3] "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citation omitted); *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (noting ALJ must give "specific, germane reasons for discounting lay witness testimony"). Discrediting lay witness statements because the witnesses are not medical professionals or because the statements are not supported by medical evidence are not germane reasons. *See Bruce*, 557 F.3d at 1116 (noting that an ALJ must not "discredit [a spouse's] testimony as not supported by medical evidence in the record"); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."); *Stout*, 454 F.3d at 1053 ("Indeed, 'lay testimony as to a claimant's symptoms

---

[3] The Court agrees with the Magistrate Judge's conclusion that Dr. Layton was not required to consider all lay witness statements. (Doc. 33 at 7-9.) While the regulations impose a duty on the ALJ to consider lay witness statements, the same is not true for expert witnesses. (*Id*.) But Plaintiff's argument is more nuanced. Plaintiff argues that the "ALJ erred by giving Dr. Layton's opinion significant weight" where Dr. Layton refused to consider lay evidence relevant to the case. (Doc. 34 at 6-7.) Accordingly, the Court will focus on whether the ALJ fairly considered the lay witness statements in light of the fact that the ALJ gave significant weight to the opinions of Dr. Layton, who did not consider this evidence.

or how an impairment affects ability to work *is* competent evidence[.]'" (emphasis in original)).

Compounding this error, the ALJ gave "significant weight" to Dr. Layton's conclusions that Plaintiff's impairments did not equal a listed impairment and that Plaintiff could perform other work. (Doc. 19-3 at 26.) Dr. Layton also had not considered the lay witness statements in forming his opinions. (Doc. 19-3 at 14.) In determining disability, "an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce,* 557 F.3d at 1115.  Here the ALJ failed to do so because the ALJ improperly rejected the lay testimony and relied significantly on expert opinion which also did not consider this evidence.  This failure constitutes reversible error.

The Ninth Circuit's decision in *Bruce v. Astrue* is illustrative. 557 F.3d at 1115-16. There, the Ninth Circuit found the ALJ had failed to consider Bruce's wife's testimony when reaching conclusions regarding the claimant's ability to work. *Id.* Although the ALJ stated that the spouse's testimony was "generally credible," the ALJ asked the Commissioner's vocational expert what turned out to be the dispositive hypothetical question, and in that hypothetical, the ALJ failed to include the limitations on Bruce's ability to work that his wife had recounted. *Id*. at 1116 & n.1. Because the ALJ did not include the wife's testimony in his analysis or include it in the information the vocational expert based his opinion upon, the court reversed. *Id.*

Like *Bruce*, here the ALJ erroneously discounted the testimony of the lay witnesses. The ALJ relied on the testimony of Dr. Layton, but Dr. Layton had not considered the lay witness evidence in determining whether Plaintiff could work.  Thus, the ALJ reached his conclusions regarding Plaintiff's ability to work without having considered the lay witness testimony documenting the severity of Plaintiff's conditions. Further, as discussed in Section II.B. below, the Court agrees with Plaintiff that if the ALJ or the expert had considered claimant's testimony and the lay witness statements regarding the severity of Plaintiff's symptoms, the expert, and the ALJ, may have rendered a different opinion.

//

### B. The Legal Error was Not Harmless

The Magistrate Judge concluded that the ALJ's failure to consider the lay witness testimony was conclusory and not sufficiently supported, but that the error was harmless. The Magistrate Judge reasoned that, because the ALJ evaluated and properly discounted Plaintiff's subjective testimony, it was reasonable for the ALJ to reject similar statements coming from friends and family. (Doc. 33 at 11-12.) The Magistrate Judge noted that Plaintiff did not argue that the lay testimony described symptoms or limitations beyond those Plaintiff herself described.[4] (*Id.* at 12.)

Harmless error review applies in the Social Security context, *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012), *superseded by regulation on other grounds as stated in Orren v. Kijakazi*, 2021 WL 5906142, *1 (9th Cir. Dec. 14, 2021), including where an ALJ erroneously rejects lay witness testimony. "Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," there is no reversible error. *Molina*, 674 F.3d at 1117. This is not in contravention to the principle that a court "may not uphold an agency's decision on a ground not actually relied on by the agency." *Id.* at 1121. "[I]f an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, [courts] cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations." *Id.*

The ALJ's reasons for rejecting Plaintiff's testimony were not germane, and therefore rejection of Plaintiff's testimony could not provide a basis for rejecting the lay witness testimony to the same effect. *See Molina*, 674 F.3d 1117 (requiring that ALJ's grounds for discrediting the Plaintiff's testimony must be "well-supported" to apply equally to other lay witness statements). For example, in determining the extent of limitations on Plaintiff's functional capacity, the ALJ concluded that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are

---

[4] Plaintiff also does not assert this argument in her objection.

- 8 -

not entirely consistent with the medical evidence and other evidence." (Doc. 19-3 at 21.) The ALJ also found that the "medical records do not fully support the claimant's allegations" related to fatigue.[5] (Doc. 19-3 at 24.) A claimant, however, is not required to produce "objective medical evidence of [their symptoms], or the severity thereof." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Nor may an ALJ discredit testimony "as not supported by medical evidence in the record." *Bruce*, 557 F.3d at 1116. In addition, by requiring Plaintiff's testimony to be "entirely consistent" with the medical evidence and the record as a whole, and rejecting her testimony as to her fatigue as not fully supported by the medical records, the ALJ erred by holding Plaintiff to a much higher standard than what is required. *See Lacy v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1285948, *1-2 (D. Ariz. Mar. 18, 2020) ("Plaintiff's medical records did not need to *fully* support the severity of her reported symptoms." (emphasis in original)).[6]

Because the ALJ's discounting of Plaintiff's testimony was not well-founded, the ALJ's rejection of the lay witnesses' similar statements was not harmless error. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) ("Because the ALJ did not make a legally sufficient adverse credibility finding with regard to [claimant's] own testimony, we cannot say with respect to [the other lay witness testimony] that 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'"). Further, if Plaintiff's testimony and the lay witness statements are credited, the final determination of disability could change in light of the vocational expert's testimony. The vocational expert testified that if Plaintiff was off task due to her side effects from her seizure medication, including fatigue, and, given her other limitations,

---

[5] The ALJ could not find Plaintiff's general allegation that she was experiencing fatigue inconsistent with the medical records; the records support that Plaintiff was fatigued on specified dates, and, even the medical expert, whose opinion the ALJ accorded "significant weight," testified that Plaintiff's medication for her seizures would produce fatigue in almost all circumstances, especially considering the effects can be more pronounced in women. (Doc. 19-3 at 24, 110-114.) While the ALJ points to single instances in the record where Plaintiff denied fatigue, the ALJ also noted that the lay witnesses have been able to observe Plaintiff "longitudinally." (Doc. 19-3 at 26.)

[6] The ALJ did find that Plaintiff's testimony pertaining to the date of her last seizure was inconsistent with the medical records. (Doc. 19-3 at 23.) Accordingly, lay witness statements as to the date of Plaintiff's last seizure may also be properly rejected if similarly inconsistent with the medical records. *See Molina*, 674 F.3d at 1121.

she would not be able to perform any work. (Doc. 19-3 at 118.)

### C. Evaluation of Plaintiff's Testimony

In her fourth argument, Plaintiff argues that the ALJ erred in evaluating Plaintiff's testimony by mischaracterizing her activities as being in contradiction to her doctor's advice and as being more substantial than they actually are. Plaintiff asserts that her driving, attendance at weekly[7] women's spiritual groups, and her one-time attendance as a guest speaker at a bible study, do not show that she has the ability to work on a 40-hour-per-week basis. (Doc. 27 at 23-25; Doc. 34 at 8.)

The Magistrate Judge found the ALJ rationally interpreted the record evidence in determining that Plaintiff's testimony was not fully supported by or consistent with her activities of daily living. (Doc. 33 at 9-10.) The Magistrate Judge reasoned that it was rational for the ALJ to conclude that Plaintiff's "noncompliance with her neurologist's safety regimen [against driving] renders the claimant's allegations of the severity and frequency of her symptoms and side effects less persuasive." (*Id*. at 10; Doc. 19-3 at 23-24.) The Magistrate Judge also found that it was rational for the ALJ to conclude that the Plaintiff's attendance at weekly spiritual groups and her one-time guest speaking showed that Plaintiff's memory loss and fatigue allegations were not consistent with her daily activities. (Doc. 33 at 10.)

"[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citation omitted). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* "[D]isability claimants should not be penalized for attempting to lead normal lives in

---

[7] Plaintiff asserts that the spiritual groups are monthly. However, there is substantial evidence to show that the groups occur weekly. (Doc. 19-41 at 87.)

the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Such activities "are not necessarily transferable to the work setting." *Id.* "A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Id.* (emphasis in original).

The Court concludes that there is not substantial evidence to show that Plaintiff's attendance at a weekly bible study or as a one-time guest speaker at bible study involves the performance of physical or mental functions that are transferable to a work setting for a substantial part of a workday.[8] These are short term infrequent activities. Similarly, substantial evidence is lacking which would show that Plaintiff was driving on a daily basis or that driving constituted a "substantial part" of her day. *Orn*, 495 F.3d at 639. The two medical records cited by ALJ in support state generally that Plaintiff "continues to drive," and nothing more. (Doc. 19-3 at 22.) Moreover, the ALJ erred in not making specific findings relating to the activities and their transferability to the work setting.

In sum, Plaintiff's participation in these limited activities does not make less persuasive Plaintiff's testimony regarding the intensity, persistence and limiting effects of her symptoms and side effects. Accordingly, the Court concludes the ALJ erred in discounting Plaintiff's testimony based on her one-time guest speaking, attendance at weekly bible groups, and the fact that she continues to drive.

//

//

//

---

[8] Although the ALJ did not make a specific adverse credibility determination based on Plaintiff attending bible study and guest speaking, the Court concludes that the ALJ was improperly discounting Plaintiff's testimony by citing these activities to refute Plaintiff's allegations related to her symptoms. (Doc. 19-3 at 22, 23-24.)

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED:**

1. Plaintiff's Objection (Doc. 34) is **SUSTAINED IN PART AND OVERRULED IN PART.**

2. The Report and Recommendation (Doc. 33) is **ADOPTED IN PART AND REJECTED IN PART** as set forth in this Order.

3. **IT IS FURTHER ORDERED** that the ALJ's Decision, which became the Commissioner's Final Decision, is **REVERSED**.

4. **IT IS FURTHER ORDERED** that this case is **REMANED** to the Social Security Commissioner. On remand, the Appeals Council shall remand this matter to the ALJ. The ALJ shall take any action necessary for resolution of this matter, including conducting any necessary hearings and taking any new evidence. After further proceedings, the ALJ shall issue a new decision consistent with this Order.

5. The Clerk of Court shall enter judgment in favor of Plaintiff, and against Defendant, and shall close its file in this action.

Dated this 31st day of March, 2022.

_____
Honorable Jennifer G. Zipps
United States District Judge